**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LORDRICK LY, | No. CV 17-8327-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 15, 2017, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on December 7, 2017, and October 18, 2018. Pursuant to the

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on August 3, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on December 30, 1956. [Administrative Record ("AR") at 209.] He has past relevant work experience as a baker. [AR at 22, 87-88.]

On February 26, 2015, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since February 15, 2015. [AR at 16; see also AR at 207-10.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 135-36.] A hearing held on December 13, 2016, was continued in order for plaintiff to obtain representation. [AR at 43-47.] A second hearing was held on June 6, 2017, at which time plaintiff appeared with a non-attorney representative, and testified on his own behalf. [AR 48-89.] A vocational expert ("VE") also testified. [AR at 87-89.] On June 28, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from February 15, 2015, the alleged onset date, through June 28, 2017, the date of the decision. [AR at 15-23.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [See AR at 1.] When the Appeals Council denied plaintiff's request for review on September 19, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in

substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that whether plaintiff had engaged in substantial gainful activity since February 15, 2015, the alleged onset date, was moot in light of the unfavorable decision.[2]

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 30, 2018. [AR at 17.]

4

[AR at 17.] At step two, the ALJ concluded that plaintiff has the severe impairments of a spinal disorder, and a disorder of major joints. [Id.] He found plaintiff's medically determinable impairments of depressive disorder and anxiety disorder to be non-severe. [AR at 18.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 18.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. § 404.1567(c),[4] as follows:

> He is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. He can frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl. He can occasionally climb ladders, ropes, or scaffolds. He can frequently reach overhead bilaterally. He must avoid concentrated exposure to extreme cold, and to fumes, odors, gases, and poor ventilation. He must avoid hazards such as unprotected heights and dangerous machinery.

[AR at 19.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a baker. [AR at 22, 88.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of February 15, 2015, through June 28, 2017, the date of the decision. [AR at 23.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) assessed the opinions of Tracy Cogbill, M.D., plaintiff's treating psychiatrist; (2) assessed the opinions of Frank Guellich, M.D., the orthopedic examining physician; and (3) rejected plaintiff's subjective symptom testimony. [JS at 2.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

## A. MEDICAL OPINIONS

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

As defendant observes, for all claims filed *on or after March 27, 2017*, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. [JS at 8 n.3.] The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Instead, the ALJ will consider the medical opinions using the factors listed in § 404.1520c((c)(1) through (c)(5) (i.e., supportability, consistency, relationship with the claimant, specialization, and "[o]ther factors," with the two most important factors being supportability and consistency), to "evaluate the persuasiveness of [the] medical opinions . . . ." Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, because plaintiff's claim was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

**1.     Dr. Cogbill**

Dr. Cogbill, who treated plaintiff at Ventura County Behavioral Health between March 2016 and March 2017, submitted a March 15, 2017, medical source statement titled "Mental

Interrogatories," in which he stated plaintiff's diagnoses of major depressive disorder, recurrent; chronic post-traumatic stress disorder ("PTSD"); and personality disorder, not otherwise specified. [AR at 469-72.] He found plaintiff markedly limited in his ability to work in coordination with or in proximity to others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. [AR at 469-70.] He found plaintiff moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals. [AR at 469-71.] Dr. Cogbill stated that he based his opinions on plaintiff's "[d]epression related to losing business, life situation, lack of funds, unstable housing, no car, [and] feeling of not having a future." [AR at 471.] He further observed that plaintiff has PTSD from being imprisoned in Vietnam and from being shot during a robbery at his business, "resulting in nightmares, intrusive thoughts and feelings of hopelessness and worthlessness." [Id.] He noted that plaintiff "continues to be hypervigilant, isolative, avoidant, has negative thinking, thoughts of suicide, threatening behaviors towards wife, difficulty sleeping, irritability and trouble concentrating." [Id.] He opined that plaintiff would have difficulty working at a regular job on a sustained basis due to his physical and mental conditions. [Id.]

The ALJ repeatedly mentioned that Dr. Cogbill's October 24, 2016, treatment note reflected that plaintiff "is passive-aggressive, non-compliant, and prevaricates." [AR at 20 and 21 (citing AR at 435).] The ALJ also mentioned that plaintiff used a Cambodian interpreter during his treatment with Ventura County Behavioral Health, at one point requesting an interpreter "only to discuss his

SSDI application,"[5] but also noted that plaintiff did not use the available Cambodian interpreter at the hearing. [Id.] The ALJ stated that Dr. Cogbill reported that although plaintiff "was making statements about killing his wife and himself with a knife . . . he never made any gesture or attempt." [AR at 21 (citing AR at 437, 446).] The ALJ then found Dr. Cogbill's opinion to be "less persuasive than the opinions of [consultative psychiatric examiner] Dr. Ritvo and the State agency mental health advisors, including Dr. Funkenstein and Dr. Klein":

> Dr. Cogbill did not include any of this information[6] in the mental interrogatories answers contained in his form report of March 15, 2017. The doctor appears to accept all of [plaintiff's] statements at face value, such as his recent claims of suicidal thoughts and thoughts of violence to others. The undersigned does not accept [plaintiff's] statements and testimony at face value, as there are inconsistencies in his testimony and his other statements.

[AR at 21 (citation omitted).]

Plaintiff contends the ALJ did not provide specific and legitimate reasons to reject Dr. Cogbill's opinions. [JS at 5.] He asserts that the ALJ instead "play[ed] a shell game ruling the opinions of the State agency non-examining doctors and consultative examining doctor are more persuasive." [Id. (citing AR at 20).] He notes that the ALJ simply found plaintiff to be "quite different in the essentially normal examination as recorded by . . . Dr. Ritvo," but "makes no interpretation or explanation why that opinion should be credited over Dr. Cogbill's opinion." [Id.] Plaintiff further argues that Dr. Cogbill's statement that plaintiff is passive-aggressive, non-compliant, and prevaricates, is not a reason to reject Dr. Cogbill's opinion, as Dr. Cogbill noted that these traits "were a roadblock to treatment [of plaintiff's personality disorder], not that they

---

[5] That treatment record actually reflects that plaintiff presented at the clinic "on [an] urgent basis, w/o [*without*] requesting translator as 'only' to discuss his SSDI application." [AR at 446.] However, plaintiff also discussed his thoughts regarding killing himself and his wife with a knife, and his disappointment and anger with a Cambodian translator, and Dr. Cogbill observed that plaintiff's "coping skills appear limited." [Id.] Dr. Cogbill also noted that plaintiff's father committed suicide "rather than seeking support from family," and opined that this "perhaps contribut[ed] to [plaintiff's] thoughts of a similar escape from his problems." [Id.]

[6] The ALJ's reference to "this information" appears to refer to Dr. Cogbill's October 24, 2016, treatment note, plaintiff's use (and non-use) of a Cambodian interpreter, and the note stating that plaintiff has made statements about hurting himself or others but not acted on those statements, which the ALJ had discussed immediately prior to discounting Dr. Cogbill's opinions. [AR at 21.]

invalidate his diagnoses or symptoms." [Id. (citing AR at 435).] He also submits that to the extent the ALJ rejected Dr. Cogbill's opinions because they were based on plaintiff's subjective symptoms and plaintiff otherwise seemed fine at the psychiatric consultative examination, this is not a legitimate reason to discount Dr. Cogbill's opinions. [Id. (citing AR at 21).]

First, in discussing the various medical opinions, the ALJ appears to analyze those opinions pursuant to the new regulation, effective for claims filed after March 27, 2017, by determining which opinions he found "more persuasive." Plaintiff's claim, however, was filed before March 27, 2017, and the ALJ instead should have analyzed the medical evidence pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

Next, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). As the Ninth Circuit recently explained, with respect to mental health issues, "symptoms wax and wane in the course of treatment." Garrison, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Id., 759 F.3d at 1017 (citing Holohan, 246 F.3d at 1205); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [the] treatment notes. Those notes show that although [plaintiff] had improved with treatment, [he] nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall

diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace."). Thus, the fact that plaintiff presented "differently" at his one time examination with Dr. Ritvo than he did during his regular treatment visits with Dr. Cogbill does not constitute substantial evidence to discount Dr. Cogbill's treating opinions.

The ALJ also repeatedly discussed the "persuasiveness" of the various medical opinions and, with respect to plaintiff's mental impairments, determined "the opinions of consultative psychiatric examiner Edward Ritvo, M.D.," who performed a psychiatric examination on November 23, 2015, the "State agency mental health advisor, Dan Funkenstein, M.D., and the . . . State agency psychological advisor P. Klein, Psy.D. [to be] persuasive, more so than any other opinions." [AR at 20 (citations omitted).] He did not, however, provide any specific and legitimate reason for discrediting Dr. Cogbill's opinion.[7] For instance, the ALJ's statement that Dr. Cogbill did not include information in his Mental Interrogatory responses regarding plaintiff's passive aggressiveness, non-compliance, and prevarication, or that he used a Cambodian interpreter at his sessions, or that he had not followed through on his "recent claims of suicidal thoughts and thoughts of violence to others," does not provide any support to his decision to discount Dr. Cogbill's opinions as set forth in his Mental Interrogatory responses. Dr. Cogbill's responses were based on his treatment of plaintiff over the period of a year and he detailed the signs and symptoms he observed during that period that supported his opinions. [AR at 471.] Additionally, the ALJ's suggestion that plaintiff's suicidal thoughts and thoughts of violence to others were "recent" phenomena, is not supported by the record. Dr. Cogbill's notes reflect that these issues were raised in some form on many of plaintiff's treatment visits: April 8, 2016 [AR at 457, 462-63

---

[7] The ALJ also briefly mentioned the April 7, 2015, treatment note of another of plaintiff's treating psychiatrists, Harshad Shah, M.D., who "noted that [plaintiff] had mood swings, paranoid behavior, anxiety, and depression. [Dr. Shah] said [plaintiff's] illness is chronic and persistent, not expected to improve." [JS at 20 (citing AR at 351).] The ALJ stated that plaintiff had been attending counseling sessions with Dr. Shah for a year but did not further discuss Dr. Shah's December 17, 2014, through April 7, 2015, treatment records or his opinions, which appear to provide support for Dr. Cogbill's opinion. [See, e.g., AR at 350-61.]

(plaintiff endorsed symptoms of suicidal ideation as well as a "plan"; he reported an incident of domestic violence five years prior "but no arrests were made"); see also AR at 464 (wife reported that five years earlier plaintiff "choked her" in the park and the police were called)]; May 12, 2016 [AR at 449, 452 (noting that plaintiff "is depressed with his current life situation, at times SI [suicidal ideation]," that he used to beat his children from whom he is estranged, and that he displays threatening behavior toward his wife)]; May 25, 2016 [AR at 446 (wife reported plaintiff makes statements about killing himself and her with a knife; plaintiff reported his father "committed suicide rather than seeking support from family, perhaps contributing to [plaintiff's] thoughts of a similar escape from his problems"]; June 16, 2016 [AR at 443 (plaintiff reported hitting his wife "again" and there was also suicidal ideation noted]; July 14, 2016 [AR at 440 (noting "some continued" suicidal ideation "though less intense")]; August 15, 2016 [AR at 437 (plaintiff stated it would not bother him if he had a stroke and died)]; and October 24, 2016 [AR at 434 (plaintiff stated that he did not care if he dies); but see AR at 429 (March 14, 2017, note reflecting that plaintiff no longer threatens suicide or assault on his wife).] The Court also notes that Dr. Cogbill's more recent treatment notes reflect Dr. Cogbill's concern as to whether plaintiff's sociopathic personality traits (which appear to include his passive aggressive and non-compliant behavior, as well as his prevarication) reflected a personality disorder or were mood related. [AR at 433, 435.]

Additionally, the ALJ's statement that Dr. Cogbill appears to accept plaintiff's statements at face value, fares no better. There is nothing in the record to suggest that Dr. Cogbill "disbelieved [plaintiff's] description of [his] symptoms, or that [Dr. Cogbill] relied on those descriptions more heavily than his own clinical observations in reaching" his conclusions regarding plaintiff's limitations, including his conclusion that plaintiff would have difficulty working at a regular job on a sustained basis due to his physical and mental conditions. Ryan, 528 F.3d at 1199-1200 (9th Cir. 2008) (citing Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1300 (9th Cir. 1999) (substantial evidence did not support ALJ's finding that examining psychologists took claimant's "statements at face value" where psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive")). In fact, Dr. Guellich, the orthopedic examining physician, observed that plaintiff was a "credible historian," and that "no exaggeration [was] noted

by this examiner." [AR at 366.] This was not a specific and legitimate reason to discount Dr. Cogbill's opinions.

Finally, the ALJ did not examine such factors as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether Dr. Cogbill's opinion was supported by and consistent with the record, and his area of specialization. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6).

Based on the foregoing, the ALJ did not provide specific and legitimate reasons to reject the opinions of Dr. Cogbill. Remand is warranted on this issue.

### 2. Dr. Guellich

On May 6, 2015, Dr. Guellich performed an orthopedic examination of plaintiff. [AR at 366-72.] Dr. Guellich found some reduced range of motion of plaintiff's thoracolumbar spine. [AR at 369.] He opined that plaintiff could do light exertional work: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for up to 6 hours in an 8-hour workday, can frequently climb ramps and stairs but should avoid climbing ladders, ropes, and scaffolds, and can frequently stoop, kneel, crouch, and crawl. [AR at 371.] The ALJ noted that Dr. Guellich's clinical findings showed that plaintiff "displayed some loss of range of motion of the thoraco-lumbar spine," but then stated parenthetically that "(Range of motion requires voluntary effort by [plaintiff])." [AR at 21.] The ALJ then stated the following:

> [Dr. Guellich] did not give any clear reason for limiting [plaintiff] to lifting/carrying, pushing/pulling 20 pounds occasionally and 10 pounds frequently. The opinions of the State agency medical advisors are more persuasive when they limit [plaintiff] to medium exertional level of lifting/carrying and pushing/pulling 50 pounds occasionally and 25 pounds frequently.

[AR at 22.] Specifically, the ALJ stated that he found the opinion of the State agency medical advisor Leonard H. Naiman, M.D., "more persuasive than that of Dr. Guellich" because Dr. Naiman "has set out a cogent summary of his reasoning." [AR at 22 (citing AR at 116-17).]

Plaintiff argues that the ALJ's implication that plaintiff's range of motion findings were the result of a less than optimal effort by plaintiff, "is improper substitution of the ALJ's opinion for that of the doctor." [JS at 9 (citing AR at 21).] He notes that the "ALJ was not there and has no

medical training to make independent findings about [plaintiff's] limited range of motion."[8] [Id. (citing Tackett, 180 F.3d at 1102-03).] He further notes that plaintiff's pain symptoms and limited range of motion are corroborated by objective x-ray evidence of spinal impairments. [Id. (citing AR at 538).] Plaintiff submits that "[n]one of this is harmless error," because if plaintiff "were limited to light unskilled work, he would be disabled under Medical-Vocational Guidelines Rule 202.02." [JS at 10.]

Defendant suggests that the ALJ properly noted that "Dr. Guellich did not give any clear reason for limiting [plaintiff] to lifting or carrying 20 pounds occasionally and 10 pounds frequently, and explained that the State agency medical advisors' reasoning on the topic was more detailed and persuasive." [JS at 10 (citing AR at 22, 366-72).] Defendant appears to contend that because the ALJ "cited and accepted" Dr. Naiman's opinion (in which Dr. Naiman stated that Dr. Guellich's report "appears to reflect more the subjective complaints of the patient rather than the objective findings as described (see above [notes imaging showed degenerative spine disease but no shoulder dysfunction, no apparent tenderness or spasm in back, no neurological or motor deficits, and negative straight leg raising test for nerve involvement])") the ALJ, therefore, also considered Dr. Naiman's statements to be "appropriate reasons for discounting Dr. Guellich's opinion." [JS at 10 (citations omitted).]

However, the ALJ did not state that he was discounting Dr. Guellich's report because it reflected Dr. Guellich's reliance on plaintiff's subjective complaints rather than on objective findings. "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for rejecting Dr. Guellich's opinions

---

[8] As previously noted, Dr. Guellich specifically noted "no exaggeration" by plaintiff. [AR at 366.]

that were not given by the ALJ in the decision. See Trevizo, 871 F.3d at 677 & nn. 2, 4 (citation omitted).

Based on the foregoing, and the fact that there is corroboration in the record to support Dr. Guellich's opinions, the ALJ's reasons for finding his opinions "less persuasive" than those of the non-examining reviewing physician, are not specific and legitimate, or supported by substantial evidence. Remand is warranted on this issue.

**B.    SUBJECTIVE SYMPTOM TESTIMONY**

After noting that "once an underlying physical or mental impairment(s) that could reasonably be expected to produce [plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of [plaintiff's] symptoms to determine the extent to which they limit [his] functional limitations" [AR at 19], the ALJ then summarized plaintiff's subjective testimony. [See AR at 19-20.] Following his brief summary of plaintiff's testimony, the ALJ stated that "[plaintiff] has made inconsistent statements as discussed in this opinion." [AR at 20.] The ALJ then reviewed plaintiff's mental and physical health records, interspersed with plaintiff's subjective symptom statements. [See generally AR at 19-22.] After doing so, the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [AR at 22.]

Plaintiff contends that the ALJ's adverse credibility determination is not supported by substantial evidence. [JS at 11.] He further submits that the "ALJ's credibility analysis in this case is very strange," as the ALJ never even indicated in the decision that he finds plaintiff not credible. [JS at 12.]

Defendant responds that the ALJ noted that plaintiff's statements that he could sit for no more than thirty minutes, stand for five to ten minutes, walk for two to three minutes, and carry only about ten pounds, were not completely reliable. [JS at 13 (citing AR at 19-21).] Defendant further notes that the ALJ found a lack of consistency between plaintiff's testimony and "some of

the objective medical evidence in the record," as well as inconsistency with "other evidence," including statements made by plaintiff concerning his alleged onset date, his reasons for leaving the workforce, and the date he stopped working. [JS at 15 (citing AR at 19-21).] Defendant states that the ALJ "also noted that Plaintiff stated his hands were numb, yet he could use chopsticks,[9] do the laundry, vacuum, take out the trash, and dress himself," and that he "presented differently in various treatment records." [Id. (citing AR at 17, 19, 59-61, 78-79, 82-83).] Furthermore, the ALJ observed that Dr. Cogbill had described plaintiff as "passive-aggressive, non-compliant, and prevaricat[ing]." [Id. (citing AR at 19-20).]

On March 28, 2016, prior to the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d

---

⁹ The ALJ actually stated that "[w]hile [plaintiff] testified that his hands are numb, he also testified that he uses chopsticks *for two or three minutes at a time.*" [AR at 19 (emphasis added).]

16

at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4.

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 19-22], the ALJ's reasons for rejecting a claimant's subjective symptom testimony must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."[10] Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection

---

[10] While SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, although the ALJ stated that plaintiff's statements concerning his symptoms were not entirely consistent with the medical evidence and other evidence of record "for the reasons explained in this decision," "the reasons explained in [the] decision" are not clear and convincing. In addition to an offhand remark that plaintiff's alleged hand numbness was somehow belied by his ability to use chopsticks for two to three minutes at a time, the only statements made by plaintiff that the ALJ *specifically* noted to be inconsistent were as follows:

> [Plaintiff] said he received gunshot wounds in a robbery attempt a year ago, when his shop was robbed . . . . The shooting was August 13, 2015. The date of this shooting during a robbery attempt is inconsistent with [his] statements about not having worked since February 15, 2015, his alleged onset date. He also worked for his sister's donut shop for about two weeks. On April 8, 2016, [plaintiff] said that he lost his business five years ago, which would put the loss in 2011, several years prior to the August 2015 date he gave for the shooting. The statements are inconsistent. On April 8, 2016, [he] said his business had closed one year ago.

[AR at 17 (citing AR at 449, 453, 454, 456, 457, 461).] The ALJ made no effort at the hearing to have plaintiff clarify this timeline. And, these statements have little to do with plaintiff's symptoms.

More fatally, in discounting plaintiff's testimony, the ALJ relied entirely on his finding that plaintiff had made allegedly inconsistent statements regarding the date his shop was closed and the date he stopped working, along with plaintiff's ability to use chopsticks for two to three minutes at a time despite the alleged numbness in his hands. This analysis runs contrary to the mandate of SSR 16-3p as the ALJ in this case focused his entire evaluation of plaintiff's subjective symptom statements on plaintiff's overall character or truthfulness. As such, the ALJ's running narrative regarding plaintiff's medical records, randomly interspersed with plaintiff's subjective symptom statements, did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's

testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

Thus, the ALJ did not provide any a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony. Remand is warranted on this issue.

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Cogbill and Dr. Guellich, the ALJ on remand shall reassess the medical opinions of record regarding plaintiff's mental and physical impairments, including the opinions of these doctors. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Second, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the

ALJ shall proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform his past relevant work as a baker, or any other work existing in significant numbers in the regional and national economies. See <u>Shaibi v. Berryhill</u>, 883 F.3d 1102, 1110 (9th Cir. 2017).

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 26, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE